# LUIS VALLECILLO Y MANDRY ET AL.

## v.

# BERTRAN BROTHERS ET AL.

Law, No. 410.

A Spaniard born in the Peninsula, residing in Porto Rico when the treaty of peace was proclaimed, but who failed to preserve his Spanish nationality in the mode required by article 9 of the treaty of Paris, adopted the "nationality" of Porto Rico and became a Porto Rican.

Opinion filed June 29, 1907.

*Willis Sweet, Esq.,* attorney for plaintiffs.

*Henry F. Hord, Esq.,* attorney for defendants.

RODEY, Judge, delivered the following opinion:

This cause is before us on a motion to dismiss the complaint for want of jurisdiction because of the lack of such diverse citizenship as would give this court the right to try the case. The plaintiffs are admittedly Porto Ricans. Two of the defendants, Bertran Bros., are Spaniards who duly preserved their Spanish citizenship under the treaty of Paris, but the third defendant, Narciso Basso, is contended by counsel for plaintiffs to be a Spaniard, or, at least, enough of a Spaniard to

Vallecillo y Mandry v. Bertran Bros.

not oust the jurisdiction of the court, while counsel for defendants claims that, under the treaty of Paris, he is a Porto Rican. This latter contention arises from the fact that said defendant did not, within the year provided in the treaty of Paris, declare his intention to remain a Spanish subject, and therefore, under the language of the treaty, in default of such declaration, he should be held to have renounced such allegiance, and to have adopted the nationality of the territory in which he resides.

Counsel for defendants also claims that there are many other persons who are indispensable parties that ought to be made defendants in addition to this defendant Narciso Basso, and that the absence of such persons as defendants also ousts the jurisdiction; but that question is not before us now.

Counsel for plaintiffs makes a most ingenious and interesting argument, indeed. He points out that which is well known to those of us who have had to consider the matter of citizenship under the treaty of Paris, and contends that art. 9 of the treaty makes a distinction between "Spanish subjects natives of the Peninsula" and "native inhabitants" of Porto Rico. He contends that while the treaty empowers Congress to fix the civil rights and political status of the native inhabitants of Porto Rico, it does not give Congress any power as to the civil rights or political status of Spanish subjects natives of the Peninsula, and he endeavors to avoid the force of the provision that, "in default of such declaration, they shall be held to have renounced it (their Spanish citizenship) and to have adopted the nationality of the territory in which they may reside." He argues that the provision of § 7 of the Foraker law, providing that, "all inhabitants continuing to reside therein, who were Spanish subjects on the 11th day of April, 1899, and then resided in Porto Rico, and their children born subsequent thereto,

Vallecillo y Mandry v. Bertran Bros.

shall be deemed and held to be citizens of Porto Rico, etc.," (31 Stat. at L. 77, chap. 191), is *ultra vires* as to Congress. In other words, that not even Congress can make the courts follow when it attempts to violate a treaty. We do not subscribe to this doctrine. He further contends that the words, "nationality of the territory in which they may reside," in art. 9 of the treaty of Paris, when applied to Porto Rico, are meaningless, because it has no nationality, and therefore that, as Congress could not provide what should become of Spanish subjects natives of the Peninsula, who failed to preserve their allegiance to the Spanish Crown within the year provided for in the treaty, they are still Spanish subjects. With all due respect, we cannot agree to this. If any point could be made on this, the contention that such delinquents would then be citizens of the United States would appear to be the more reasonable, but we are not deciding that, and even if we so held,—which counsel are not asking us to do, —that holding would also oust the jurisdiction here.

The argument made, while ingenious, fails to convince us. The high contracting powers who negotiated that treaty, in our opinion, had power to contract as in § 9 they have done, and Spain, being a monarchy, certainly had power to denationalize its own subjects, even if it is doubtful whether any person could be deprived of his United States citizenship without his consent, were that question involved.

We therefore must hold that the defendant Basso, for lack of having preserved his allegiance to the Spanish Crown as stated, has adopted "the nationality," whatever that may mean, of Porto Rico, and has become a Porto Rican; and therefore, for lack of the diverse citizenship required under our ruling in another phase of this same case, the cause must be dismissed for lack of jurisdiction, with costs, and it is so ordered.